# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **WILTON AUGUSTINE, ET AL** | : | **DOCKET NO. 2:08-cv-1102** |
| **VERSUS** | : | **JUDGE TRIMBLE** |
| **EMPLOYERS MUTUAL CASUALTY CO., ET AL** | : | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the court is a Motion to Remand [Doc. 10] filed by plaintiffs Wilton Augustine and ASA Family Enterprises, d/b/a Big A Pawn Shop (hereafter "Augustine"). The motion is opposed by defendant Employers Mutual Casualty Company (EMC) who removed this matter to this court. Also made defendants to the action filed originally in state court are US Solid Wall, LLC, alleged to be "a Louisiana limited liability company," and "Don Simon," d/b/a Simon Construction, Simons Building, and Newtech Building, Inc., alleged by plaintiff collectively in the original complaint to be "a Louisiana sole proprietor . . . ." Doc. 1, Att. 1, ¶1. These latter defendants are referred to collectively as "the Simons Defendants"[1] and they neither joined in nor opposed the motion to remand.

For reasons set forth below, the court finds that the Motion to Remand must be DENIED. In connection with the court's alternative finding that plaintiffs will be unable

---

[1] Plaintiffs allege the individual defendant's name to be "Don Simon." In his answer defendant states his name as "Don Simon." Doc. 1, Att. 9, p. 10. The defendant's correct name is "Don Simons." Doc. 15, Att. 14, p. 4. This defendant and his company or trade names will be referred to collectively as "the Simons defendants."

to establish a cause of action against the Simons defendants, we issue a separate Report and Recommendation recommending to the district court dismissal of those claims.

I.
PROCEDURAL HISTORY

A.    <u>State Court Proceeding</u>

1.    Claims Asserted

Plaintiffs brought suit in state court on September 19, 2007, against EMC, an Iowa Corporation, as insurer for various properties they claimed to own.  These properties are located in Calcasieu Parish, Louisiana, and are alleged to have been damaged by Hurricane Rita.  Plaintiffs maintain that EMC is indebted to them for failing to initiate loss adjustment of the property damage claim within the time required by law, for adjusting the claim "unreasonably low," for giving plaintiffs no opportunity to conduct needed repairs, and similar adjusting and hurricane claim-payment complaints.

The original complaint also named as defendants US Solid Wall, LLC, (a "Louisiana limited liability company") and Don "Simon,"[2] "a Louisiana sole proprietor" of various named entities.  Doc. 1, Att. 1, ¶ 1.  Plaintiffs alleged that these defendants were indebted to them as follows:

    a.  Simons acted as a building contractor and public adjuster;
    b.  US Solid Wall purchased property "and the rights to insurance proceeds" to repair the structure but, plaintiffs allege, US Solid Wall failed to apply and the insurance proceeds to building repair and therefore owes that money to plaintiffs; and
    c.  Plaintiffs were forced to repossess the property purchased by US Solid Wall allegedly rendering the Simons defendants liable for "failing to honor the agreement between them and deliver the property in usable condition."  Doc. 1, Att. 1, ¶ 14.

---

[2] See footnote 1.

Doc. 1, Att. 1, ¶¶ 12-16.  In addition to monetary awards to which plaintiffs claim they are entitled and in connection with the assertion that the Simons defendants agreed to act as public adjusters, plaintiffs also seek a judicial declaration that the public adjuster contract is null and void as against public policy.

### 2.  Proceedings in State Court Prior to Removal

EMC answered the original petition on November 27, 2007.  Doc. 1, Att. 9, p. 3.  EMC answered each allegation of the complaint by admitting that it provided insurance but maintaining that the contract was the best evidence of its contents and that denying it owed additional amounts under the policy.

The Simons defendants filed a one-page answer on December 4, 2007, denying all allegations "for lack of sufficient information to justify a belief in the truth therein." Doc. 1, Att. 9, p. 10.  The Simons defendants made no mention of their citizenship in their answer, nor did they raise any affirmative defenses that may have been available to them.

The state court record indicates that the Simons defendants were not cooperative with EMC's effort to obtain discovery.  Mr. Simons, for example, refused to attend a deposition that had been arranged cooperatively through his counsel [Doc. 15, Att. 14], forcing EMC to obtain Letters Rogatory to compel Mr. Simons' appearance at a deposition to be held in Austin, Texas on July 1, 2008.  Doc. 1, Att. 15.

The following facts were elicited from Mr. Simons at his deposition:

a.  Mr. Simons never lived in the State of Louisiana.  Doc. 1, Att. 6.
b.  Mr. Simons was the sole owner of US Solid Wall.  Doc. 1, Att. 7.

    c. When asked point-blank whether there was a public adjuster contract with plaintiffs, Mr. Simons answered "Maybe. . . . I don't – I don't recall" and then acknowledged that he is not a public adjuster.  Doc. 26, Att. 2.

    d. Mr. Simons testified that he was to receive "one-half of anything I collected above what [Augustine] had collected" but ultimately he received nothing.  Doc. 26, Att. 2.

EMC claims that it learned for the first time at the deposition that the Simons defendants were indeed diverse.  Additionally at the deposition EMC claims it received information that the Simons defendants were improperly joined.

    Most interestingly when Mr. Simons was asked "[w]hat is your understanding of why you're involved in this lawsuit?" he replied "[s]o the lawsuit could be held in Lake Charles, Louisiana."  When asked for further elucidation on the matter, Mr. Simons stated "[i]f I was – if it was two parties involved, then it couldn't be moved out of state or to some higher court."  Doc. 30, Att. 1.

    B.   <u>Removal</u>

    On July 30, 2008, EMC filed a Notice of Removal with this court.  Doc. 1.  The Notice described the action as a civil one between citizens of different states whereby plaintiffs seek recovery in excess of $75,000 exclusive of interest and costs.  Doc. 1, p. 2. The Notice also alleged that removability was not apparent from the original petition as the petition alleged the state citizenship of the Simons defendants to be Louisiana.  EMC claims that it was unaware until the July 1, 2008, deposition of Simons that (1)  the Simons defendants were improperly joined as  the written contracts upon which the Simons defendants were sued [Doc. 1, Att. (a note and vendor's lien attached as Exhibit "B" to the Notice)] were not between them and the named plaintiffs but rather were

between US Solid Wall, LLC, and Augustine Properties, LLC[3]; (2)  the Simons defendants were not Louisiana citizens as suggested in the original complaint; and (3) there was no contract for the Simons defendants to act as public adjuster.  The Notice also states that it was not until the deposition of Wilton Augustine that EMC knew that all of the insured properties were actually owned by Augustine Properties, LLC, and not the named plaintiffs.[4]

In its Notice EMT further maintains that consent to removal of by Simons defendants is not necessary because they were improperly joined and are nominal parties.

EMT finally maintains in its Notice that the July 1, 2008, deposition of Simons constitutes an "other paper" as contemplated by 28 U.S.C § 1446(b) so that removal was timely.[5]

C.    Motion to Remand

On August 28, 2008, plaintiffs filed a Motion to Remand.  Doc. 10.  Plaintiffs claim that the Notice of Removal, filed "[o]n the eve of [the] trial date,"[6] was filed "on

---

[3] As further evidence of this point, EMC also attached a copy of the pleading filed by Augustine Properties, LLC, against US Solid Wall, LLC, seeking recovery of the property sold.

[4] The testimony of Wilton Augustine is referenced on several occasions by defendant but none of those references indicate when that deposition was taken.  EMC states in its supplemental memorandum [Doc. 30] at page 2 that the deposition was taken July 22, 2008, and plaintiff does not refute that assertion; therefore, we accept that as the date of testimony.

[5] 28 U.S.C § 1446(b) states that where the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant of a copy of an amended pleading, motion, order, or "other paper" from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of diversity of jurisdiction more than one year after commencement of the action.

[6] While there was a trial date pending in state court at the time of removal, it is exceedingly clear to this court that not much progress had been made below and that trial on the assigned date would have been unlikely.  Mr. Simons had refused to cooperate in his deposition, necessitating issuance of letters Rogatory. Doc. 1, Att. 15, Doc. 15, Att. 14.  Additionally plaintiffs had not responded to discovery directed to them. The state court record attached to the Notice of Removal shows that on May 27, 2008, EMC was forced to file a Motion to Compel against plaintiffs for their failure to comply with discovery.  Doc. 1, Att. 12.  EMC had already moved for a continuance of the pending trial date due to plaintiffs' failure to comply.  Doc. 1,

the superficial argument that the Plaintiffs in this case . . . can state no cause of action

against co-Defendants."  Doc. 10, Att. 1, p. 1.  Plaintiffs suggest the Notice of Removal

filed by EMC is fatally defective because it does not properly identify and attach to it the

contract that plaintiffs maintain is the contract creating the obligations owed.  That proper

contract, according to plaintiffs, was attached as Exhibit 2 to their Motion (Doc. 10) is

found on letterhead of "Simons Building Corporation," is undated, and reads as follows:

> MR AUGUSTINE
>
>           AS PER OUR CONVERSATION MARCH 1 AND MY ESTIMATING AND AND BEING THE CONTRACTOR TO MEET WITH THE INSURANCE CO TO BID OR REBID ALL WORK AND DAMADGE RELATED TO HURRICANE RITA
>           OUR AGREEMENT IS TO DEVIDE THE MONEY COLLECTED AS NOTED BELOW.
>           ALL FUNDS PAID ON 1638 BROAD TO BE DIS PURSED TO SIMONS IN FULL OR 100%
>           ALL FUNDS ON MR AUGUSTINES PROPERTY OTHER THAN 1638 BRAOD ST.[7] TO BE DIVIED ½ TO EACH OF ALL FUNDS COLLECTED BY SIMONS AS THE ESTIMATING CONTRACTOR.  THIS AGREEMENT IS FOR FUNDS COLLECTED AFTER.  Jan. 24, 06

This document is thereafter signed "NEWTECH BUIULDERS DON SIMONS PRES"

and "MR AUGUSTINE OWNER OF PROPERTYS."  Beneath each title is the signature

of Don Simons and, apparently, Wilton Augustine.

      Further plaintiffs claim that Wilton Augustine owns 96.3% of Augustine

Properties, LLC, as evidenced by his affidavit attached to the motion.  Doc. 10, Att. 3.

---

Att. 11.  Nothing in the state court records indicates whether these motions were addressed prior to removal.

[7] As we discuss further later in this opinion, the property bearing municipal address 1638 Broad Street, Lake Charles, Louisiana, was conveyed from Augustine Properties, LLC, to US Solid Wall, US.  Plaintiffs reference this transaction in their petition and claim damages related to damages owed for the Simons defendants "failing to honor the agreement between them and deliver the property in usable condition."  Doc. 1, Att. 1, ¶ 14.  We accept that the parties to this document intended to list 1638 Broad Street as the property on which "funds" were to be disbursed "to Simons in full or 100%."

According to plaintiffs the affidavit establishes Mr. Augustine's entitlement to bring this action for insurance proceeds against EMC.  Plaintiffs argue that EMC has failed to establish "that there is no plausible cause of action that Augustine could assert against Simon[s]."

Finally plaintiffs maintain that deposition testimony cannot serve as "other paper" that would trigger anew EMC's right to seek removal under 28 U.S.C. §1446(b) and that removal was not proper as EMC failed to obtain consent of the Simons defendants.[8]

Since the filing of the original Motion to Remand [Doc. 10] and the opposition thereto [Doc. 15], the following has transpired in this court:

1.   Reply Memorandum in Support of Motion to Remand [Doc. 16];

2.   A hearing on the motion held December 16, 2008, after which the court allowed plaintiffs and EMC to amend their respective pleadings to comport with argument asserted at the hearing [Doc. 20];[9]

3.   Supplemental Memorandum in Support of Motion to Remand [Doc. 23];

4.   Employers Mutual Insurance Company's Supplemental Memorandum in Opposition to Plaintiffs' Motion to Remand [Doc. 26];

5.   Employers Mutual Insurance Company's Response to Supplemental Memorandum in Support of Motion to Remand [Doc. 30]; and

6.   Plaintiffs' Reply to Employers Mutual Insurance Company's Supplemental Memorandum in Opposition to Plaintiff's Motion to Remand [Doc. 31].

On March 26, 2009, a second hearing was held.  Doc. 32.  After consideration of oral argument and the various memoranda set forth above, this court issued a Memorandum

[8] Plaintiffs also sought expedited consideration of its motion due to the imminent trial date.  See footnote 6 for discussion of our assessment of the likelihood that trial date would have gone forward.
[9] Neither side made any amendments.

Ruling [Doc. 36] seeking additional briefing on six discreet points set forth therein.  Doc. 36, pp. 9-10.  Each party responded as ordered.  Docs. 38 and 40.

The Simons defendants have neither joined in nor opposed the Motion to Remand and have filed nothing that would support or controvert the position of either party with respect to any of the issues presented.

II
LAW AND ARGUMENT

A.    Removal and Remand

Federal courts are courts of limited jurisdiction.  *Hower v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).  Because of the limited nature of the jurisdiction of a federal court, a presumption exists that "a cause lies outside this limited jurisdiction and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) (citations omitted).

A defendant can remove to federal court any civil action that could have been originally brought in federal court.  *See* 28 U.S.C. § 1441(a).  In order to remove an action from state court, a defendant must file notice of removal and all defendants who have been properly joined and served must join in that removal "no later than thirty days from the day on which the first defendant was served."  28 U.S.C. § 1446(a); *Getty Oil Corp. v. Insurance Company of North America*, 841 F.2d 1254, 1262-63 (5th Cir. 1988). Where, however, the initial pleadings do not provide grounds for removal, "a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it

may first be ascertained that the case is one which is or has become removable."  28 U.S.C. § 1446(b).

There are exceptions to the "Rule of Unanimity" espoused by *Getty Oil*, supra, and those exceptions are more fully discussed below.  These exceptions are designed to prevent a defendant's statutory right of removal to federal courts from being defeated by a plaintiff's nefarious actions, paraphrasing *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (*en banc*).  "Federal Courts should not sanction devices intended to prevent the removal to a Federal court where one has that right and should be equally vigilant to protect the right to proceed in the Federal court as to permit the state courts, in proper cases, to retain their own jurisdiction."  14B Wright, Miller & Cooper, *Federal Practice & Procedcure*, § 3723 (quotations and citations omitted).

If all procedural requirements are not met, the plaintiff may move for remand within thirty days of removal.  28 U.S.C. § 1447(c).  Any doubt as to the propriety of removal must be resolved in favor of a remand and it is the removing defendant's burden to establish that removal was proper.  *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008); *Richardson Carbon & Gasoline Co. v. Interenergy Res.*, 99 F.3d 746, 751 (5th Cir. 1996).

B.     <u>Subject Matter Jurisdiction</u>

District courts have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.  28 U.S.C. § 1332(a)(1).

Except for the allegations of the original petition and one short moment at the hearing held March 26, 2009, plaintiffs have not contested that diversity jurisdiction

exists.[10]  This action is between citizens of different states and the amount in controversy exceeds $75,000.  28 U.S.C. § 1332(a)(1).  Accordingly, this court has subject matter jurisdiction.

      C.    <u>Timeliness</u>

As we note previously EMC stated in its Notice of Removal that it was unaware that the contractual claims sued upon were actually between Auguustine Properties, LLC, and the Simons defendants until the deposition of Mr. Simons.[11]  Also EMC claims that it was not until the deposition of Mr. Simons that it learned that diversity of citizenship existed between plaintiffs and all defendants.  It is at that deposition that EMC claims it learned for the first time that Mr. Simons was not a citizen of the State of Louisiana and that he had never resided in the State of Louisiana.  EMC argues that the deposition transcript of Mr. Simons served as an "other paper" triggering resurrection of the thirty day removal window provided by 28 U.S.C. § 1446.

Plaintiffs maintain that EMC's removal was not timely and, therefore, this matter must be remanded.  Without providing any authority in support of their proposition,

---

[10] At the March 26, 2009, hearing, plaintiffs temporarily abandoned the concessions made in brief and argument at a prior hearing, i.e. that diversity jurisdiction exists.  At inception of the March hearing plaintiffs argued that complete diversity did not exist, attempting to introduce a printout (not produced before hearing) from the Louisiana Secretary of State Commercial Division, Corporations Database, which listed the domicile address of US Solid Wall, LLC, as 1638 Broad St., Lake Charles, LA 70601.  Plaintiffs abandoned this no-diversity position, and reclaimed its previously abandoned yes-diversity position, after being advised by this court of the Fifth Circuit's holding in *Harvey v. Grey Wolf Drilling*, 542 F.3d 1077, 1079 (5th Cir. 2008), that the citizenship of a limited liability company for diversity purposes is determined by the membership of its parties.  Don Simons, the sole member of US Solid Wall, LLC (Doc. 1, Att. 7), has never resided in Louisiana.  Doc. 1, Att. 6.  Although *Harvey* was decided after the Notice of Removal was filed, EMC did cite in its Notice several cases decided in the Western District of Louisiana in 2007 and 2008 that similarly held.  See Doc. 1, p. 12.

[11] Although EMC fails to clarify this well in its notice, it appears to rely on the July 22, 2008, testimony of Mr. Augustine to establish true ownership of the property as well as the note and vendor's lien establishing sale of the property.  See Doc. 1, Exs. A and E.

Plaintiffs claim that Mr. Simons' deposition testimony cannot act as an "other paper" as contemplated by 28 U.S.C. § 1446.

The Fifth Circuit has held "a transcript of . . . deposition testimony [to be] other paper" under 28 U.S.C. § 1446(b). *S.W.S. Erectors, Inc. v. Infax, Inc.,* 72 F.3d 489, 494 (5th Cir.1996). Under *S.W.S. Erectors,* the receipt of the written deposition transcript triggers the running of section 1446(b)'s thirty-day removal period. *Id. See also Delaney v. Viking Freight, Inc.,* 41 F.Supp.2d 672, 677 (E.D.Tex.1999) ("The Fifth Circuit has squarely held that a deposition transcript qualifies as 'other paper' within the meaning of 28 U.S.C. § 1446(b) that can start accrual of the 30-day period for removing." (citing *S.W.S. Erectors,* 72 F.3d at 494).

Neither side to this controversy has stated when the transcript of Mr. Simons' testimony was received; however, removal took place within thirty days of the testimony being given. We can confidently state without citing any authority at all that the transcript could not have been received before the testimony was given so we therefore find that removal was timely as the deadline applies to EMC.[12]

D.    Necessity of Consent to Removal by the Simons Defendants

There is no question but that the Simons defendants did not consent to the removal of this matter. There is a question as to whether their consent is required.

As we noted earlier, *Getty Oil,* 841 F.2d at 1262-63, holds that all properly joined and served defendants must consent to the removal of an action either by joining in the

---

[12] In its third memorandum addressing remand plaintiffs assert for the first time that EMC knew of the true ownership of the property before suit was even filed as it had obtained a sworn statement from Wilton Augustine on June 21, 2007. Review of that statement, however, fails to provide EMC with particularized information of that fact as Mr. Augustine stated therein that the property had been transferred to the LLC "seven or eight months ago," which would have been after Hurricane Rita. Doc. 23, Att. 1, p. 4 (p 15, lines 19-20 of the sworn statement).

motion or by timely filing written consent to the removal into the record.  As is usually the case this "Rule of Unanimity" has its exceptions.

The most often relied-upon exception to the requirement of unanimity of consent is that a ". . . removing party need not obtain the consent of a co-defendant that the removing party contends is improperly joined."  *Rico v. Flores,* 481 F.3d 234, 239 (5th Cir. 2007).   Application of the unanimity rule to improperly or fraudulently joined defendants "would be nonsensical."  *Jernigan v. Ashland Oil Inc.,* 989 F.2d 812, 815 (5th Cir. 1993).

In order to establish improper or fraudulent joinder of a co-defendant, the removing defendant must establish either: "actual fraud in the pleading of jurisdictional facts," or "an inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Smallwood v. Illinois Cent. R.R. Co.,* 385 F.3d 568 (5th Cir. 2004) (*en banc*), *cert. denied by, Illinois Cent. R. Co. v. Smallwood,* 544 U.S. 992, 125 S.Ct. 1825 (2005) (citing *Travis v. Irby*, 326 F.3d 644 (5th Cir. 2003)).[13]

A third category of improper joinder is commonly referred to as "fraudulent misjoinder" or "egregious misjoinder."  This doctrine was recognized but not applied bu this court in *Booth v. Louisiana Citizens Coastal Plan*ˎ 2007 WL 933665 (W.D. La.) and it was recognized and applied by this court in *Frankland v. State Farm Fire & Casualty Co.*, 2008 WL 4072819 (W.D. La.).

---

[13] Prior to the *Smallwood* decision the issue of proper joinder of defendants was referred to as "fraudulent joinder."  In this decision, often referred to as *Smallwood II,* we are instructed by the Fifth Circuit to no longer refer to this issue as "fraudulent joinder" but rather as "improper joinder," finding this latter terminology to be "more consistent with the statutory language than the term 'fraudulent joinder,' which has been used in the past.  Although there is no substantive difference between the two terms, 'improper joinder' is preferred."  385 F.3d at 751, fn. 1.   Whether we would be cautioned in this case to use "improper" as opposed to "fraudulent" given our ultimate conclusion is unknown.

A final exception to the unanimity of consent rule seems to exist in a situation where it is found that there has been collusion between the plaintiff and the non-consenting defendant.  *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine),* 220 F.Supp.2d 414 (E.D.Pa. 2002)**;** *see also Canadian American Assn of Professional Baseball, Ltd. V. Ottawa Rapidz,* 686 F.Supp.2d 579, 584-588 (M.D.N.C. 2010); *Hauck v. Borg Warner Corp.*, 2006 WL 2927559 (M.D. Fla.).

Because of a deep concern that there had indeed been "actual fraud in the pleading of jurisdictional facts" vis-à-vis plaintiffs' allegation that Don Simons was a "Louisiana sole proprietor," we issued a Memornadum Ruling seeking additional briefing by the parties.  Doc. 36.  Research by the undersigned found countless references to "actual fraud in the pleading of jurisdictional facts" to be a basis for finding  fraudulent or improper joinder but failed to locate a single case where such actual fraud was found.

Accordingly we asked the parties to do the research.  Memoranda submitted in response to the court's request provide no more information than what the court previously had.  *See* Docs. 38 and 40.

1.    Improper Joinder

a.   Actual Fraud in the Pleading of Jurisdictional Facts

Any discussion of fraudulent or improper joinder includes as its first prong of analysis the issue of whether there has been actual fraud in the pleading of jurisdictional facts.

"Actual Fraud" is defined in *Black's Law Dictionary* as "[a] concealment or false representation through a statement or conduct that injures another who relies on it in acting."  In the original petition plaintiffs alleged that defendant Don "Simon" was "a

Louisiana sole proprietor" of various named entities.  Doc. 1, Att. 1, ¶ 1.  This court concludes that statement was a "false representation" that was made to conceal Don Simons' true citizenship and was made by plaintiffs deliberately so that defendant EMC would rely upon that statement to conclude it was unable to remove this matter because true diversity did not exist.

As we noted in our Memorandum Ruling filed September 30, 2009, although plaintiffs alleged Don Simons to be "a Louisiana sole proprietor" in the complaint proper, plaintiffs thereafter, below the body of the complaint on the last page by itself, asked that service be issued against Mr. Simons "Via Louisiana Long Arm Statute."  Doc. 1, Att. 1, p. 5.  We suggested in our Memorandum Ruling this was proof that plaintiffs knew at the time the petition was filed that Don Simons was not a citizen of Louisiana.  Doc. 36, pp. 7-8.  Plaintiffs concede in their memorandum filed October 16, 2009, that they knew Don Simons was not a resident of the State of Louisiana at the time of filing.  Doc. 38, p. 3, fn. 2.  Thus, in this court's opinion, plaintiffs have conceded that there was a deliberate "false representation" made in the pleading itself when the plaintiffs alleged Don Simons to be a "Louisiana sole proprietor."[14]

In that same memorandum, plaintiffs argue as follows:

> If it is the Court's finding that the labeling of this person, who has operated certain businesses in Louisiana in his individual capacity, as a Louisiana proprietor is actual fraud based on the evidence now in this record, then there may be nothing more to be offered that is helpful or pertinent on the point . . . .

---

[14] We have found no jurisprudence that would require EMC to have looked beyond the jurisdictional facts alleged in the petition proper, such as to the service instructions given, alone, on the final page of the petition following the page containing counsel's signature, to determine whether plaintiffs were accurate in the allegations actually made.  We impose no such requirement here.

Doc. 38, p. 3.  It is this Court's finding that the labeling of Mr. Simons in the petition is actual fraud.[15]

Plaintiffs point out, however, that they were not fraudulent in their allegation that US Solid Wall, LLC, is a Louisiana limited liability company.  While this may be true and as we note above, the citizenship of a limited liability company is determined by the citizenship of its members.  Accordingly, a misrepresentation as to the citizenship of Mr. Simons constitutes a misrepresentation as to the citizenship of his an LLC of which he is the sole member.

The undersigned has found no case law that explains any ramification of a finding of actual fraud in the pleading of jurisdictional facts other than a finding of "fraudulent" or improper joinder which, in turn, renders the consent of that fraudulently joined defendant unnecessary for purposes of removal.  As EMC points out the test of improper joinder is stated in disjunctive terms so that a finding of actual fraud in the pleading "obviates the need for consideration of whether [plaintiffs] have stated a judiciable claim against the US/Simons Defendants."  Doc. 40, p. 5.  Neither party was able to enunciate any additional ramification that would stem from this finding despite being asked to do so by this court.  *See* Docs. 36, 38, and 40.  Neither has the undersigned found any additional result.

Since we find there has been actual fraud in the pleading of jurisdictional facts, we find that the Motion to Remand should be denied.

---

[15] Ellipted from this passage is a nonsensical and gratuitous comment by plaintiffs on the length of time that has passed since the filing of the original complaint, a comment that adds nothing to the analysis at hand.  Suffice it to say this matter would have been resolved quite some time ago but for actions of plaintiffs and their deliberate misstatement of jurisdiction in their original complaint.

b.  Inability of the Plaintiffs to Establish a Cause of Action
Against the Simons Defendants

Recapitulating, the allegations against the Simons defendants are that (1)  Simons acted as a building contractor and public adjuster; (2)  US Solid Wall purchased property "and the rights to insurance proceeds" to repair the structure but failed to apply the insurance proceeds to building repair, rendering US Solid Wall liable to plaintiffs for return of those insurance proceeds; and (3)  plaintiffs are entitled to damages for the Simons defendants' "failing to honor the agreement between them and deliver the property in usable condition."  Doc. 1, Att. 1, ¶¶ 12-14.  In addition to monetary damages plaintiffs also seek declaratory relief pronouncing the public adjuster contract null and void.

i.   No Right of Action

EMC argues that plaintiffs have no right of action against the Simons defendants at all and particularly with respect to claims related to the sale of one piece of property.[16] EMC argues that the only proper party to bring all claims against the Simons defendants is Augustine Properties, LLC, as the latter was the titular owner of the immovable property.

In order of appearance, plaintiffs' responses to this point are as follows:

1.  EMC's no right of action argument is "superficial" because
EMC failed to attach the appropriate contract to its Notice of
Removal.  Doc. 10, p. 1.

---

[16] The property sold was described in the petition as bearing municipal address 2215 Broad Street, Lake Charles, Louisiana, but this apparently was a typographical error, the municipal address properly being 1638 Broad Street, Lake Charles, Louisiana.  EMC attempts to argue that plaintiffs are unable to establish a cause of action against the Simons defendants because, their allegation to the contrary notwithstanding, there was no contract of sale related to 2215 Broad Street.  We accept plaintiffs claim this was a typographical error and is no basis for finding no right of action and this point receives no further scrutiny.

2. EMC offers no proof as to when the property was transferred. Doc. 10, p. 1.

3. Wilton Augustine owns Augustine Properties, LLC, and therefore he is entitled to bring suit against Simons.  Doc. 10, p. 5.

4. Augustine's right to sue EMC establishes his right to sue the Simons defendants.  Doc. 10, p. 6.

5. EMC fails to provide the court with necessary information about ownership at the time of loss.  Doc. 10, p. 7.

6. EMC's argument is precluded by *Smallwood v. Illinois Cent. R. Co.*, 342 F.3d 400 (5th 2003).  Doc. 10, p. 6-7; Doc. 16; Doc. 23, Doc. 31.

7. Whether or not plaintiffs have stated a cause of action against the Simons defendants "is an issue for summary judgment or an exception of no cause of action in state court."  Doc. 23, p. 3.

Most of these points are made without supporting jurisprudence and without cogent explanation of how those points would assist the court in reaching its conclusion.  Absent from any of the memoranda is a claim that EMC is incorrect in its assertion that the properties at issue are actually owned by Augustine Properties, LLC, and not the named plaintiffs.  Plaintiffs attach to their Motion to Remand an affidavit prepared by Wilton Augustine and in that affidavit Mr. Augustine does not deny that the property was owned by his LLC but rather shows that her is the owner of 96.3% of that LLC.

EMC produces documents and deposition testimony of Mr. Augustine that would indicate that the property had indeed been transferred to Augustine Properties, LLC, prior to the filing of the original petition and prior to Hurricane Rita.  Comparing documents presented to the testimony adduced proved to be somewhat challenging since the former described the property through formal legal descriptions and the testimony discussed property ownership by municipal address; however, we are convinced that EMC sufficiently established the ownership of the property through the information presented

particularly in light of plaintiffs' failure to merely assert, through memoranda or the affidavit of Mr. Augustine, that the factual statements of EMC were incorrect.

We will first address the point asserted by plaintiffs that this court must rely on *Smallwood v. Illinois Cen. R. Co.*, 342 F.3d 400 (5th Cir. 2003) to disregard EMC's claim that the Simons defendants were improperly joined.

Plaintiffs mention the cited *Smallwood* case first in its Motion to Remand [Doc. 10], then again in its Reply Memorandum in Support of Motion to Remand [Doc. 16], then again in its Supplemental Memorandum in Support of Motion to Remand [Doc. 23], and again in its Reply to Employers Mutual Insurance Company's Supplemental Memorandum in Opposition to Plaintiffs' Motion to Remand [Doc. 31].

In several of memoranda mentioned above, plaintiffs excoriated EMC for failing to address the continuing arguments made by plaintiffs as to the effect of the cited *Smallwood* case.  But filed on the same date as that last memorandum was Employers Mutual Insurance Company's Response to Supplemental Memorandum in Support of Motion to Remand [Doc. 30] in which EMC finally addressed the cited *Smallwood* case and argued it to be inapposite.

The *Smallwood* case argued by plaintiffs and distinguished by EMC is what is commonly referred to as *Smallwood I* and was vacated by the Fifth Circuit to allow for an *en banc* hearing.  *See Smallwood v. Illinois Cent. R. Co.*, 355 F.3d 357 (5th Cir. 2003). Although relied upon heavily by plaintiffs, plaintiffs fail to bring this fact to the attention of the court or suggest to the court why it should rely on language found in a decision that was later vacated by the court that issued it.  EMC similarly failed to bring this fact to the attention of the court.

An *en banc* decision was ultimately rendered in *Smallwood v. Illinois Cent. R. Co.,* 385 F.3d 568 (5th Cir. 2004),[17] commonly referred to as *Smallwood II*.   After reviewing that decision, however, we conclude that *Smallwood II* is inapplicable to the proceeding here to serve, as plaintiffs argue *Smallwood I* did, to bar EMC's claim that the Simons defendants were improperly joined.

*Smallwood* involved a claim for injury to plaintiff whose vehicle was struck by a train at a railroad crossing in Florence, Mississippi.   Plaintiff named as defendants the Illinois Central Railroad, a diverse defendant, as well as the Mississippi Department of Transportation (MDOT), a non-deverse defendant who, plaintiff claimed, was responsible for maintaining the crossing.

Illinois Central removed the case claiming that MDOT was fraudulently joined to destroy diversity and prevent removal and, in support of its claim that MDOT was fraudulently joined, suggested that plaintiff could not recover against MDOT because plaintiff's claims against MDOT were preempted by the Federal Railroad Safety Act (FRSA), 49 U.S.C. § 20101, *et. seq.*   The Federal District Court agreed with Illinois Central and dismissed MDOT from the litigation.   Thereafter, "[a]pplying the 'law of the case,' the district court then granted summary judgment for Illinois Central on the basis that Smallwood's claim against the railroad was equally preempted."  385 F.3d at 572.

In *Smallwood I* the Fifth Circuit concluded that Illinois Central did not meet its burden of establishing fraudulent joinder and ordered the case remanded.   Thereafter the Fifth Circuit voted to hear the matter *en banc*.  *Id.*

---

[17] Discussed initially herein at and in footnote 13, *supra.*

Several times throughout the opinion, the Fifth Circuit made it very clear that its holding was "very narrow" and could be succinctly stated as follows:

> [W]hen a nonresident defendant's showing that there is no reasonable basis for predicting that state law would allow recovery against an in-state defendant equally disposes of all defendants, there is no improper joinder of the in-state defendants.

*Id.* at 571.  Stated another way later in the opinion, the court found that "when, on a motion to remand, a showing that compels a holding that there is no reasonable basis for predicting that state law would allow the plaintiff to recover against the in-state defendant necessarily compels the same result for the nonresident defendant, there is no improper joinder."  *Id.* at 574.  The rationale for this holding, heavily criticized in the dissent with which seven members of the panel joined, need not be analyzed here for purposes of reaching our conclusion that *Smallwood II* simply does not apply.

EMC is certainly arguing that plaintiffs are not the owners of the property which is the subject of the agreements alleged to exist that would bind the Simons defendants, thus EMC has no right of action against the Simons defendants.  However ***it is plaintiffs themselves, not EMC,*** who argue that EMC must also be claiming that it is Augustine Properties, LLC, not named plaintiffs, who have a claim against EMC.  In so arguing, plaintiffs are attempting to parlay EMC's no right of action argument as it relates to the Simons defendants into a "common defense" to the claim against EMC and then to further claim that *Smallwood II* precludes EMC from making this argument.

EMC has never claimed that plaintiffs have no right of action against it.  In its answer to the original petition, EMC admits that it issued a policy of insurance in favor of plaintiffs.  Doc. 1, Att. 9.  It does suggest in its answer that the terms and conditions of

the policy are best found in the policy itself, but it does not claim that these plaintiffs have no right to sue it.  In fact plaintiffs themselves cite in their original memorandum in support of its Motion to Remand jurisprudence that would support their claims that plaintiffs would have an insurable interest in the immovable property despite title being vested in a related entity.  See Doc. 10, Att. 1, p. 5, relying on *Continental Ins. Co. v. Emerald Star Casino Natchez, LLC*, 2008 WL 1884046 (E.D. La.).  EMC has never claimed otherwise.

Despite plaintiffs' best efforts they have not established that EMC's assertion that they are not the proper parties to assert the claims against the Simons defendants is a "common defense" to the claims asserted by plaintiffs against EMC.

Additionally in *Smallwood II* plaintiff alleged the diverse and non-diverse defendants were responsible for her injuries from their *joint* negligent contributions to her one injury.  Here plaintiffs allege EMC is responsible under contract for insurance proceeds not paid and plaintiffs allege the Simons defendants are responsible under *other* contracts for *other* damages sustained separate and apart from what EMC perhaps should have paid.  The claims asserted by plaintiffs against the Simons defendants and the claims asserted against EMC are totally different, as are the grounds for recovery against EMC and the Simons defendants.  The only common denominator between the two sets of claims is that they arose as a result of Hurricane Rita.[18]  Whether the fact of ownership of the property may or may not prove helpful to EMC in defense of the claims against it, it remains true that the claims themselves are utterly distinct from each other.  While they may share a common fact, they do not share a common defense.

_____

[18] These facts are discussed again when we discuss "fraudulent misjoinder" below.

For the foregoing reasons, we do not find that *Smallwood*, in any of its forms, precludes EMC from making this argument of no right of action as it relates to the Simons defendants.  We further conclude that the holding in *Smallwood II* does not compel this court to remand this matter to state court.

> ii.     Plaintiffs Claim That the Contract That Established the Rights and Obligations Between the Parties was the Contract Attached as Exhibit A to its Motion (Doc. 10, Att. 2).

The fact that EMC failed to attach the contract suggested by plaintiffs to be the contract between plaintiffs and the Simons defendants is not fatal to this removal as plaintiffs suggest.  Nevertheless,  Plaintiffs argue that the contract, found as Attachment 2 to Document 10, does form the basis of its allegation in its original complaint that the Simons defendants are indebted to plaintiffs for insurance proceeds that, by contract, the Simons defendants were to use toward repair of the property and therefore it must be considered.

Fortunately it is not necessary to attempt to decipher what the parties intended when they entered into the contract relied upon by the parties and reproduced above.  We will accept plaintiffs' contention that this agreement was indeed intended to require the Simons defendants, or some part of them, to use insurance proceeds for repair.   But the fact remains, as EMC points out, that Mr. Simons never received any insurance proceeds. Doc. 15, Att. 6.

To the extent the "proper" contract between the parties attached to the Motion to Remand would somehow obligate the Simons defendants to utilize insurance proceeds to repair property, thus rendering them liable to plaintiffs for reimbursement or proceeds not

used, EMC has successfully established there is no judiciable claim to be had since there can be no claim for reimbursement of insurance proceeds that were never received.[19]

Plaintiffs also allege in paragraph 14 of their original complaint that US Solid Wall was liable to them for "failing to honor the agreement between them and deliver the property in usable condition."  Doc. 1, Att. 1.  Nowhere in either the note and vendor's lien between Augustine Properties, LLC, and US Solid Wall [Doc. 1, Att. 2] or the "contract" between Augustine and Simons [Doc. 10, Att. 2] is there the slightest hint of such an agreement to "deliver the property in usable condition."

Plaintiffs have submitted no other document that creates an obligation such as that alleged in paragraph 14; therefore we find that EMC has established plaintiffs can establish no judiciable claim for these damages as well.

iii.    Plaintiffs Claim Issues are Determinable Only by State Court.

Plaintiffs' assert that this matter should be remanded because whether they have stated a cause of action against the Simons defendants "is an issue for summary judgment or an exception of no cause of action in state court."  Doc. 23, p. 3.  This statement is made without any support and is without merit.

We routinely consider summary judgment-type evidence to determine whether there has been proper joinder of a defendant, whether that issue is considered in the

---

[19] Mr. Augustine did state in his sworn statement given before suit was filed, Attached as Exhibit A to Doc. 23, that he did give to Mr. Simons $165,000 of the insurance proceeds he, Mr. Augustine, received in November of 2005.  Mr. Augustine claims the $165,000 was given to Mr. Simons in September or October of 2006 when Mr. Simons bought the property (the property was actually purchased in July of 2006.  See Doc. 1, Att. 2).  Mr. Augustine claims that Mr. Simons used $100,000 of that money to make a down payment on the property purchased and he claimed not to know how Mr. Simons used the other $65,000. Doc. 23, Att. 1, p. 26 (p. 103, lines 7-18 of the sworn statement).
  We cannot assume these are the proceeds to which the complaint refers as being owed back to plaintiffs as they were received by Mr. Augustine in November of 2005.  According to the "contract" between them, Mr. Simons was to receive a percentage of insurance funds collected after January of 2006.  Doc. 10, Att 2.

context of whether diversity exists or whether the consent of a non-diverse co-defendant

is necessary.  That practice is well supported by the jurisprudence.  *See Badon v. RJR*

*Nabisco, Inc.,* 224 F.3d 382, 389 (5th Cir.) (*Badon I), op. after certified question*

*declined,* 236 F.3d 282, 286 (5th Cir. 2000).  As the court stated in  *Badon I:*

> Ever since a time many years prior to 1988 we have consistently
> recognized that diversity removal may be based on evidence
> outside the pleadings to establish that the plaintiff has no
> possibility of recovery on the claim or claims asserted against the
> named resident defendant and that hence such defendant is
> fraudulently joined and his citizenship must be disregarded for
> jurisdictional purpose. *See, e.g., Keating v. Shell Chemical Co.,*
> 610 F.2d 328, 333 (5th Cir.1980); *Burden v. General Dynamics
> Corp.,* 60 F.3d 213, 217 (5th Cir.1995).  *See also, e.g., LeJeune v.
> Shell Oil Co.,* 950 F.2d 267, 271 (5th Cir.1992) ("In this circuit, a
> removing party's claim of fraudulent joinder to destroy diversify is
> viewed as similar to a motion for summary judgment.... A court is
> to pierce the pleadings to determine whether, under controlling
> state law, the non-removing party has a valid claim against the
> non-diverse parties"); *Carriere v. Sears, Roebuck and Co.,* 893
> F.2d 98, 100 (5th Cir.), *cert. denied,* 498 U.S. 817, 111 S.Ct. 60,
> 112 L.Ed.2d 35 (1990) ("When determining fraudulent joinder, the
> district court may look to the facts as established by summary
> judgment evidence as well as the controlling state law").[FN11] Thus
> it is clear that although a state court complaint on its face may
> allege a state law claim against an in-state defendant that does not
> preclude it from being removable (by the non-resident defendant),
> when filed, if the plaintiff's pleading is pierced and it is shown that
> as a matter of law there is no reasonable basis for predicting that
> the plaintiff might establish liability on that claim against the in-
> state defendant.

*Badon.*  224 F.3d at 389-90.

This claim of plaintiffs is also without merit.

        iv.    Plaintiffs' Claim for Declaratory Relief.

What plaintiffs never do cleanly argue when defending their Motion to Remand is

the fact that these plaintiffs have claimed a right to declaratory judgment against the

Simons defendants, declaring the alleged agreement for Mr. Simons to be invalid and unenforceable.

EMC argues in its Notice of Removal that any declaratory action would of necessity be brought by Augustine Properties, LLC, as the owner of the property. However, the document submitted by plaintiffs as proof of the obligation to act as a public adjuster [Doc. 10, Att. 2], whatever that document does or does not do, is indeed between "Mr. Augustine" and "New Tech Builders, Don Simons Pres."  To the extent this "contract" is between one or more of the Simons defendants and one or more of the plaintiffs, and to the extent this "contract" is one for one or more of the Simons defendants to act as a "public adjuster," then one or more of the plaintiffs would have a claim for declaratory relief against one or more of the Simons defendants.

But that is not the end of the analysis.

The substantive right to a declaratory judgment action in Louisiana is designed to provide a means for adjudication of rights and obligations in cases involving an ***actual controversy*** that has not reached the stage where either party can seek a coercive remedy. *Chauvet v. City of Westwego,* 599 So.2d 294, 296 (La. 1992) (emphasis added) (citing 10A Charles A. Wright et al, *Federal Practice and Procedure* § 2751 (2d ed. 1983));. *see also Gary v. Marquette Casualty Company,* 72 So.2d 619, 621-22 (La.App. 1st Cir. 1954). The function of a declaratory judgment is simply to establish the rights of the parties or express the opinion of the court on a question of law without ordering anything to be done. *ANR Pipeline Company v. Louisiana Tax Commission,* 815 So.2d 178, 185 (La.App. 1st Cir. 2002), *affirmed and remanded* 851 So.2d 1145  (La. 2003).  Louisiana jurisprudence has limited the availability of declaratory judgment by holding that "courts

will only act in cases of a present, justiciable controversy and will not render merely advisory opinions." *Church Point Wholesale Beverage Co., Inc. v. Tarver,* 614 So.2d 697, 701 (La. 1993).

From the evidence presented it hardly appears that there is any "present, justiciable" controversy between the plaintiffs and the Simons defendants that would warrant declaratory relief and, in this case, the Louisiana court was  being asked to render merely an advisory opinion.

From the portions of the deposition testimony of Mr. Simons that have been produced, there is absolutely zero indication that he had any intention whatsoever of seeking to enforce any agreement that he act as public adjuster.  In fact, Mr. Simons testified that he could not recall whether or not there was such an agreement.  Doc. 26, Att. 2 ("Q.  . . . There was a public adjuster contract with Wilton Augustine, was there not?  A.  Maybe.  . . . I don't – I don't recall.  Q.  But you're not a public adjuster.  A. No.").  Mr. Simons testified that he believed the public adjuster contract was a written agreement between "Augustine and myself," but when pressed for particulars he claimed not to know because there was "[t]oo much water under the bridge."  Doc. 26, Att. 2.

Mr. Simons also testified that he understood that his involvement in this lawsuit was so that it "could be held in Lake Charles, Louisiana.  . . . If I was – if it was two parties involved, then it couldn't be moved out of state or to some higher court."  Doc. 30, Att. 1.  When pushed about his involvement in this litigation and whether there was any agreement with the plaintiffs that they would not pursue a claim against him, the following discussion with Mr. Simons was had:

Q.     (By Mr. Politz)  I'm asking whether Don Simons ever had the understanding that, even though you're named in this lawsuit, they're not actually pursuing you specifically. Have you ever had that understanding from anybody?  Did anybody ever present that to you?  Anybody make that offer to you?  Anybody enter into – you know, offer that agreement to you?

A.     There was never any type of offer or anything like that. One day my name shows up with your company, you know, as being sued.

Q.     No, no.  I understand how it – I understand the nature of – you know, we're codefendants in this together.    I understand that.  I'm trying to determine whether there was any kind of agreement that you may have entered into with the plaintiffs, Wilton Augustine, or anybody like that, saying "We're going to – we're going to name you in this suit" –

A.     No.

Q.     -- "but we're not pursuing a claim against you actually"?

A.     No.

Q.     No?

A.     This happened.  He told me.

     THE WITNESS:  Right?

     MR. OLNEY [Simons' Counsel]:  When he got served, then he called me, yeah.

A.     And I said, "What the hell is going on" – and I said "What the hell is going on here?"  I received a copy of this.

Q.     (By Mr. Politz)  I understand.  So you never –

     MR. OLNEY:  And a PD was entered against him also.

A.     Right.  I was completely surprised.  And I said "What the hell are they suing me for?"

Doc. 30, Att. 1 (deposition page 112, line 9 to deposition page 113, line 17).

If there had been a "present, justiciable controversy" between the Simons defendants and the plaintiffs over this alleged public adjuster contract, Mr. Simons would hardly have asked "What the hell are they suing me for?"  If there were currently a "present, justiciable controversy" between the Simons defendants and the plaintiffs over that contract, the Simons defendants would have reconvened in this litigation and asserted their rights to whatever remedies to which they claim entitlement.  None of this occurred and, accordingly, we find that plaintiffs have established no judiciable claim against the Simons defendants for declaratory relief.

For all of the foregoing reasons we conclude that the plaintiffs would be unable to establish a cause of action against the Simons defendants.  Mr. Simons' espoused understanding of his presence in this litigation, to keep it from being "moved . . . to a higher court," only solidifies our confidence in this finding.  Accordingly and even if we had not found actual fraud in the pleading of jurisdictional facts, we would have denied the Motion to Remand on this basis.

Given our conclusion on this issue, we are also issuing this date a Report and Recommendation that the claims against the Simons defendants should be dismissed.

c.   Fraudulent Misjoinder or Egregious Misjoinder

There is a jurisprudentially recognized a third category of improper joinder, obviating the need for unanimity of consent or complete diversity for removal, and that third category is commonly referred to as "fraudulent misjoinder" or "egregious misjoinder."

Fraudulent misjoinder may exist where a diverse or consenting defendant is joined with a non-diverse or non-consenting defendant where the claims against the two defendants have no real connection between them.  *See Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) (citing *Tapscott v. MS Dealer Serv. Corp*, 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.* 204 F.3d 1069 (11th Cir. 2000)).  The Fifth Circuit Court of Appeals seems to have indicated its approval of this concept when it said in dicta "the *Tapscott* principal that fraudulent misjoinder of plaintiffs is no more permisslbe than fraudulent misjoinder of defendants to circumvent diversity jurisdiction."  *In re Benjamin Moore & Co.*, 309 F.3d 296, 298 (5th Cir. 2002).

As we point out above, this doctrine was recognized but not applied by this court in *Booth v. Louisiana Citizens Coastal Plan*, 2007 WL 933665 (W.D. La.) and it was recognized and applied by this court in *Frankland v. State Farm Fire & Casualty Co.*, 2008 WL 4072819 (W.D. La.).

*Frankland*, supra, involved a set of circumstances very similar to that presented here.  In *Frankland*, the plaintiff, represented by the same law firm representing plaintiffs here, sued State Farm Fire & Casualty for failing to properly and promptly adjust their damage claim for damages caused by Hurricane Rita.  Additionally plaintiff named also as defendant a private insurance adjuster seeking a declaration that her contingency fee agreement with that adjuster was "void and unenforceable under Louisiana law."  *Id.* at *1.  State Farm removed claiming the non-diverse defendant private insurance adjuster

had been improperly misjoined and therefore his citizenship could be ignored for purposes of determining whether removal was proper.

In *Frankland* we analyzed this court's previous ruling in *Booth,* 2007 WL 933665, which noted that the Fifth Circuit Court of Appeal appears to have adopted the reasoning espoused by the Eleventh Circuit Court of Appeal in *Tapscott,* 77 F.3d at 1360, that fraudulent misjoinder constitutes proper rounds for removal.

We concluded that fraudulent misjoinder would be a proper grounds for removal and then analyzed whether joinder was proper in that case.  After noting the elements of the relevant Louisiana joinder rule, La. C.C.P. art. 463, we found there not to be proper joinder as the claims against State Farm and the alleged private insurance adjuster lacked a "community of interest" as required by law.  "The Louisiana Supreme Court has defined 'community of interest' as 'the parties' causes of actions (or defenses) 'arising out of the same facts, or presenting the same factual and legal issues'."  *Frankland* at *4 (quoting *Stevens v. Bd. of Trustees of Police Pension Fund of Shreveport,* 309 So.2d 144, 147 (La. 1975)).  When considering the issue we noted:

> Plaintiff argues that State Farm and Gostyla share a community of interest because Plaintiff's claims against each co-defendant arise from the same transaction or occurrence, namely the damage to Plaintiff's property caused by Hurricane Rita.  . . . Defendant points out that the declaratory relief sought as to Gostyla is distinct and separate from the type of damages sought from State Farm.
>
> The undersigned finds insufficient community of interest for Gostyla and State Farm to be joined as co-defendants.  Although the claims derive from a common factual episode – an insurance claim regarding damage to Plaintiff's home – the legal issues are entirely distinct, the relief sought is different, and the discovery issues completely separate.  State Farm is not a party to the contract between Plaintiff and Gostyla, nor is Gostyla a party to

> Plaintiff's contract of insurance with State Farm.  Due to the
> distinct and separate nature of the contracts and claims, there can
> be no joint, several, alternative, or *in solid* liability among Gostyla
> and State Farm.  The legal issue in Gostyla's case is where his
> contract is valid and enforceable.  State Farm, on the other hand,
> must defend against accusations that it improperly denied an
> insurance claim.  . . . Thus, the undersigned finds that it is apparent
> from the substance of the pleadings that Plaintiff's claims against
> Gostyla have been improperly cumulated with the claims against
> Gostyla.

*Id.* at *4-5.  Thereafter we recommended to the district court that it exercise its authority under Rule 21 of the Federal Rules of Civil Procedure to sever the claims against the two co-defendants and remand the case against the non-diverse defendant.[20]

Just as in *Frankland*, the claims against EMC and the Simons defendants are separate and distinct.  Although the claims derive from a common factual episode – Hurricane Rita – the legal issues are entirely distinct, the relief sought is different, and the discovery issues completely separate.  EMC is not a party to any contract between plaintiffs and the Simons defendants, nor are the Simons defendants a party to plaintiffs' contract of insurance with EMC.  Due to the distinct and separate nature of the contracts and claims, there can be no joint, several, alternative, or *in solid* liability among EMC and the Simons defendants.  The legal issues in the Simons defendants' case were whether a contract is valid and enforceable and whether amounts are owed under a contract of sale.  EMC, on the other hand, must defend against accusations that it improperly adjusted and evaluated an insurance claim.

Given there to be no commonality to the claims or apparent savings of litigant to judicial resources in combining these claims, together with Mr. Simons' understanding of

---

[20]FED.R. CIV. P. Rule 21 states "Misjoinder of parties is not a ground for dismissing an action.  On motion or on its own, the court may at any time, on just terms, add or drop a party.  The court may also sever any claim against a party."

his inclusion in this litigation as being solely to keep it from being "moved . . . to a higher court," we have no difficulty concluding this joinder was "fraudulent," "egregious," and "improper."

Even if we had not concluded that there was actual fraud in the pleading of jurisdictional facts, and even if we had concluded that plaintiffs could establish a cause of action against the Simons defendants, we nevertheless could have found a fraudulent misjoinder of the claims and thus found the consent of the Simons defendants to be unnecessary and suggest the district court exercise its authority under Rule 21 of the Federal Rules of Civil Procedure to sever the claims and remand the Simons defendants to state court.[21]

### d.   Collusion between Plaintiffs and the Simons Defendants

The unanimity of consent rule appears to be unnecessary also where it is found that there has been collusion between the plaintiff and the non-consenting defendant.  *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine),* 220 F.Supp.2d 414 (E.D.Pa. 2002).   In *In re Diet Drugs* the district court found compelling direct and circumstantial evidence to support the removing defendants' claim that plaintiffs' counsel throughout the country and one set of defendants had reached agreements whereby plaintiffs would ultimately dismiss the one set of defendants in exchange for their refusal to consent to removal.   The court there concluded that such a collusion constituted a fraudulent joinder so that consent of the non-consenting defendants was unnecessary for removal to be proper.

---

[21] *See* footnote 19.  Given our finding that plaintiffs can establish no cause of action against the Simons defendants and our Report and Recommendation that those claims be dismissed, there is no need to suggest ordering severance of the claims.

This exception was discussed by the district courts in *Canadian American Assn of Professional Baseball, Ltd. v. Ottawa Rapidz,* 686 F.Supp.2d 579, 584-588 (M.D.N.C. 2010) and *Hauck v. Borg Warner Corp.*, 2006 WL 2927559 (M.D. Fla.).  In each of those cases, however, the courts failed to find clear and convincing evidence of collusion, the standard each court found necessary to achieve before the exception could be applied.  Thus each court found the exception to be inapplicable in their case.  In *Daiz v. Kaplan Univ.*, 567 F.Supp. 2d 1394 (A.D. Fla. 2005), the court did find clear and convincing evidence of collusion, and thus found the consent of the colluding defendant unnecessary.  Further the court exercised its discretion under Rule 21 of the Federal Rules of Civil Procedure to sever the claim of the colluding non-consenter and remanded that claim to state court.

We raise this point only because there does appear to be some complicity on the part of the Simons defendants in an effort to prevent EMC from successfully removing this case to this court.  We find evidence of this complicity to be:

1.  Failure of the Simons defendants to correct the obvious misstatement made by the plaintiffs in their original petition as to the citizenship of Mr. Simons;
2.  Refusal of Mr. Simons to assist in the smooth handling of this litigation by refusing to participate in deposition on the date agreed to by his counsel;
3.  Failure of the Simons defendants to raise any affirmative defenses that might extricate them from this litigation;[22]

---

[22] One example of this point is the failure of the Simons defendants to at least affirmatively plead existence of other litigation as a defense to the claims for damages stemming from their purchase of property from plaintiffs, which property was subsequently repossessed by the rightful owner.  Although we did not address this particular point raised by EMC, finding this opinion to already be lengthy and tedious enough, US Solid Wall was sued and the property was foreclosed upon by the titular owners in a proceeding entitled "Augustine Properties, L.L.C., Represented by Wilton Augustine vs. US Solid Wall, L.L.C., Represented by Don Simons" and bearing docket number 2006-5912 of the 14th Judicial District Court sitting in and for the Parish of Calcasieu, State of Louisiana.  EMC argues that there would be no justiciable claims that could be asserted against the Simons defendants for damages related to the failed contract of sale as any such claims would be barred by *res judicata* given the existence of this other litigation.  If called upon we

    4. Failure of the Simons defendants to extricate themselves from the declaratory action by simply agreeing the contract between them was null and void as plaintiffs allege; and

    5. Failure of the Simons defendants to take any position whatsoever with respect to the removal or Motion to Remand.

We find this complicity, however, to be somewhat passive in nature, more of a submission rather than a collusion.  Whether collusion could serve as an exception to the rule of unanimity in this court is a question to be reserved for another day and we are hardly prepared to suggest that submission should be yet another exception to that rule.

We do note, however, that had the Simons defendants chosen to take a position one way or the other with respect to the removal and the motion to remand, they could have saved the other parties and this court a great deal of time and effort.

III
CONCLUSION

For all of the reasons set forth above, we find that the Motion to Remand should be DENIED and an Electronic Order is issued with this Memorandum Opinion to that effect.  Additionally a separate Report and Recommendation is being prepared and filed recommending to the district court that the claims against the Simons defendants be dismissed given plaintiffs' inability to establish any cause of action against them.

---

would reject the argument of EMC as we have been provided no proof that the related litigation ever became final, a necessary condition for *res judicata* to come to fruition.  *See* La. R.S. 13:4231; *Burguieres v. Pollingue*, 843 So.2d 1049, 1053 (La. 2003).  Although EMC's point with respect to *res judicata* may not be totally well-taken, it would seem these defendants, if they truly felt in jeopardy of plaintiffs pursuing them in this litigation, would plead the existence of that related lawsuit to avoid being subject to penalties in both or perhaps to preclude this court from making a determination on those damages once the judgment in the state court suit became final.

THUS DONE AND SIGNED in Chambers in Lake Charles, Louisiana, this 30th

day of November, 2010.

_____

KATHLEEN KAY
United States Magistrate Judge